IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

G & G Closed Circuit Events, LLC,  )
  )
                                 Plaintiff,  )
  )
  vs.  )
  )
Francisca Gonzalez Arvizu, et al.,  )
  )  No. 2:18-cv-1386-HRH
                             Defendants.  )
_____)

# O R D E R

Cross-motions for Summary Judgment;
<u>Motion to Join Indispensable Party</u>

Plaintiff moves for summary judgment.[1] This motion is opposed and defendants cross-move for summary judgment.[2] Defendants' cross-motion is opposed.[3] Defendants also move to join an indispensable party.[4] This motion is opposed.[5] Oral argument was not requested on any of the pending motions and is not deemed necessary.

---

[1]Docket No. 19.

[2]Docket No. 33.

[3]Docket No. 34.

[4]Docket No. 36.

[5]Docket No. 37.

Facts

Plaintiff is G & G Closed Circuit Events, LLC. Defendants are Francisca Gonzalez Arvizu, aka Francisca A. Gonzalez Arvizu, aka Angelica Gonzalez; and Taco Mich & Bar 2 LLC.

Taco Mich & Bar 2 LLC is the owner of Taco Mich & Bar in Glendale, Arizona. Gonzalez Arvizu is the sole member of the LLC and the registered agent for the LCC. She is also listed as the licensee/agent on the liquor license for Taco Mich & Bar while the LLC is the owner of the license.[6]

Plaintiff obtained from Golden Boy Promotions LLC "the exclusive license to exhibit [the] live English language telecast . . . of" the Alvarez/Chavez bout on May 6, 2017 as well as the "accompanying undercard matches"[7] (referred to as "the Program" herein). Plaintiff's exclusive license for the Program did not "include the right to exhibit the Event in any language other than English. . . ."[8]

On May 6, 2017, the Program was shown at the Taco Mich and Bar. Defendants did not obtain a sublicense from plaintiff. Rather, Gonzalez Arvizu avers that "the LLC has a subscription with Sky Televison, which provided the Program on a delayed transmission

---

[6]Arizona law requires a limited liability company license to be held "through an agent who shall be a natural person. . . ." A.R.S. § 4-202(A).

[7]Closed Circuit Television License Agreement at 1, Exhibit 1, Plaintiff's Affidavit [etc.], Docket No. 19-3.

[8]Id.

from Mexico."⁹ The Program was broadcasted at the Taco Mich and Bar in Spanish, not English.¹⁰

Plaintiff commenced this action on May 4, 2018. In its complaint, plaintiff asserts two claims: 1) a claim alleging that defendants violated 47 U.S.C. § 605 and 2) a claim alleging that defendants violated 47 U.S.C. § 553. There is a split of authority as to whether a single act of interception can violate both § 605 and § 553, and in its motion for summary judgment, plaintiff appears to indicate that it is abandoning its § 553 claim.¹¹

Plaintiff now moves for summary judgment on its § 605 claim and defendants cross-move for summary judgment dismissing this claim. Defendants also move to join Golden Boy Promotions LLC as an indispensable party.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets

---

⁹Affidavit of Francisca Gonzalez Arvizu at 2, ¶ 8, Exhibit A, Amended Response to Plaintiff's Motion for Summary Judgment and Amended Cross-Motion for Summary Judgment, Docket No. 33.

¹⁰Affidavit of Amanda Hidalgo at 1, Docket No. 19-4 ("I saw the HBO PPV Canelo v. Chavez Jr fight card being shown on the above-described televisions, which was being broadcast by Box Azteca in Spanish").

¹¹Motion for Summary Judgment at 5, Docket No. 19.

its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). When, as here, the "parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).

"Section 605(a) of the Communications Act prohibits the unauthorized receipt and use of radio communications for one's 'own benefit or for the benefit of another not entitled thereto.'" DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008) (quoting 47 U.S.C. § 605(a)). "[T]he 'communications' protected by § 605(a) include satellite television signals." Id. "Any person aggrieved by a violation of subsection (a) . . . may bring a civil action in a United States district court. . . ." 47 U.S.C. § 605(e)(3)(A). "'[A]ny person aggrieved'"

includes "any person with proprietary rights in the intercepted communication. . . ." 47 U.S.C. § 605(d)(6).

As an initial matter, defendants argue that plaintiff is not an "aggrieved person" and thus does not have standing to bring a § 605 claim against defendants. This argument is based on the fact plaintiff's contract with Golden Boy Promotions only gave plaintiff "the exclusive license to exhibit [the] live English language telecast . . . of" the Program.[12] It is undisputed that the Program was broadcasted at the Taco Mich and Bar in Spanish, not English. Thus, defendants argue that plaintiff lacks standing to bring a § 605 claim.

Plaintiff argues that it does have standing to bring a § 605 claim against defendants because its license with Golden Boy Promotions gives it enforcement rights, regardless of in what language the Program was broadcasted. Plaintiff's licensing agreement with Golden Boy Promotions contains an "anti-piracy" clause that provides:

> You and your sublicensees shall use their reasonable best efforts to employ adequate security systems and other measures to prevent theft, pirating, copying, duplication or unauthorized exhibition or transmission of the Event. You and your sublicenses shall promptly advise Promoter of any piracy (i.e., unauthorized use or proposed use) of the telecast in the Territory. Promoter and Licensee, acting jointly, shall have the right to commence or settle any claim or litigation arising out of the alleged piracy, use or proposed use of the telecast in the Territory. Promoter and Licensee shall notify each other in writing and shall consult with each other and mutually agree before commencing or settling any such claim or litigation in the

---

[12]Closed Circuit Television License Agreement at 1, Exhibit 1, Plaintiff's Affidavit, Docket No. 19-3.

> Territory. Any damages, whether statutory, compensatory, punitive or otherwise, which Promoter or Licensee may recover from the theft, piracy, copying, duplication, unauthorized exhibition or transmission of the Event in the Territory, after payment of reasonable legal fees and disbursements, shall constitute gross revenues from the Event, to be shared by, and distributed to, Promoter and Licensee as provided in Paragraph 1 of this Agreement. Licensee shall advance all required legal fees and disbursements, subject to recoupment from any application recovery, and shall report all expenses, settlements and recoveries to Promoter on a quarterly basis. Your sublicensees shall have no right to commence or settle any claim or litigation arising out of the alleged piracy of the telecast hereunder without the prior written consent of Promoter.[13]

For purposes of the licensing agreement "telecast" means the "live English language telecast"; the Event means "the captioned Bout and accompanying undercard matches[;]" and the Territory means "the United States of America and Canada."[14]

Plaintiff argues that the anti-piracy clause grants it the right to pursue piracy claims arising out of both the "telecast" and the "Event." Plaintiff's president, Nicholas Gagliardi, acknowledges that it might be possible to interpret the anti-piracy clause as limiting plaintiff's enforcement rights to only "the telecast" but that "was not the case on this particular event, nor has it been the case on the other events both prior and subsequent to the instant Event, where [plaintiff] has acted as a domestic licensee."[15] "Rather," Gagliardi avers

---

[13]Id. at 5, ¶ 6.

[14]Id. at 1.

[15]Declaration of Nicolas J. Gagliardi [etc.] at 2, ¶ 5, appended to Plaintiff's Reply [etc.], Docket No. 34.

that "for this Event, and those other events also, [plaintiff] was afforded anti-piracy enforcement rights throughout the entire United States regardless of in what language the broadcast was exhibited. This arrangement between [plaintiff] and Golden Boy Promotions, LLC has been in place for years."[16] Gagliardi further avers that Golden Boy Promotions has "waived any requirement of advance notification in writing and/or consultation before settling or commencing any piracy claims."[17] Gagliardi avers that Golden Boy Promotions "has never objected or otherwise questioned the course of conduct the parties have adopted" and that plaintiff "has relied upon the acquiescence of Golden Boy Promotions, LLC with respect to the application of paragraph 6 of the Licensing Agreement in pursuing litigation arising out of the Event herein, both in this case and others throughout the United States."[18]

The licensing agreement is governed by Nevada law.[19] "The purpose of contract interpretation is to determine the parties' intent when they entered into the contract." Century Sur. Co. v. Casino W., Inc., 329 P.3d 614, 616 (Nev. 2014). "[W]hen a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written; the court may not admit any other evidence of the parties' intent because the contract expresses their intent." Ringle v. Bruton, 86 P.3d 1032, 1039 (Nev.

---

[16]Id. at 2-3, ¶ 5.

[17]Id. at 3, ¶ 6.

[18]Id. at 3, ¶ 7.

[19]Closed Circuit Television License Agreement at 8, ¶ 13, Exhibit 1, Plaintiff's Affidavit, Docket No. 19-3.

2004). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way[.]" Galardi v. Naples Polaris, LLC, 301 P.3d 364, 366 (Nev. 2013).

The licensing agreement is clear and unambiguous. It provides that the "Promoter and Licensee, acting jointly, shall have the right to commence or settle any claim or litigation arising out of the alleged piracy, use or proposed use of the telecast in the Territory."[20] The "telecast" is defined as the "live English language telecast. . . ."[21] This language unambiguously only gave plaintiff the right to pursue piracy claims with Golden Boy Promotions' consent and for English language broadcasts.

Plaintiff may, however, be attempting to argue that the contract has been modified by a course of conduct. Even though the licensing agreement contains a clause that precludes oral modification,[22] under Nevada law, "[e]ven where [the parties to the contract] include in the written contract an express provision that it can only be modified or discharged by a subsequent agreement in writing, nevertheless their later oral agreement to modify or discharge their written contract is both provable and effective to do so.'" Tallman v. Eighth Jud. Dist. Ct., 359 P.3d 113, 119 (Nev. 2015) (quoting Silver Dollar Club v. Cosgriff Neon Co., Inc., 389 P.2d 923, 924 (Nev. 1964)). However, there is insufficient evidence currently before the court to conclude that Golden Boy Promotions and plaintiff modified the licensing

---

[20]Id. at 5, ¶ 6.

[21]Id. at 1.

[22]Id. at 8, ¶ 13.

agreement. The only evidence before the court is Gagliardi's conclusory, self-serving declaration and "[a] conclusory self-serving declaration, without more," is insufficient to show an absence of facts. Olson v. Dias, Case No. C 08–3382 PJH, 2010 WL 3787113, at *2 (N.D. Cal. Sept. 24, 2010). In short, there are genuine issues of material fact as to whether plaintiff had enforcement rights to pursue piracy claims for unauthorized Spanish-language broadcasts of the Program.

Defendants may also be arguing that plaintiff lacks standing because it only had rights for the "live" transmission of the program. To the extent that defendants are making such an argument, it fails because defendants have failed to offer any evidence other than Gonzalez Arvizu's affidavit to support their contention that their broadcast was a delayed transmission. And, as plaintiff aptly argues, Gonzalez Arvizu's conclusory, self-serving affidavit is insufficient to create an issue of material fact.

In sum, there are genuine issues of material fact as to whether plaintiff has standing to bring a § 605 claim.[23] Neither plaintiff nor defendants are entitled to summary judgment on plaintiff's § 605 claim.

Because of these factual disputes, defendants argue that Golden Boy Promotions will have to be joined as a party to this action. "A person is required to be joined if feasible under . . . Rule 19(a)(1)(B) if 'that person claims an interest relating to the subject of the action and

---

[23]Because there are genuine issues of material fact as to whether plaintiff has standing to bring a § 605 claim, the court need not consider plaintiff's other arguments.

is so situated that disposing of the action in the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.'" E.E.O.C. v. Peabody Western Coal Co., 610 F.3d 1070, 1081 (9th Cir. 2010). The indispensable party issue is "properly raised at any stage in the proceeding." CP Nat'l Corp. v. Bonneville Power Admin., 928 F.2d 905, 911–12 (9th Cir. 1991).

Defendants argue that Golden Boy Promotions should be joined because the licensing agreement provides that Golden Boy Promotions and plaintiff are to act "jointly" in pursuing anti-piracy claims but there is no evidence that Golden Boy Promotions has been acting jointly with plaintiff in this case. Thus, defendants argue that it is conceivable that Golden Boy Promotions could file a lawsuit against them alleging the same claims as plaintiff, which puts them at substantial risk of incurring double obligations.

Regardless of how the contract modification issue is ultimately resolved, Golden Boy Promotions will not be an indispensable party. If the licensing agreement was not modified as Gagliardi contends, then plaintiff lacks standing to bring a § 605 claim against defendants and plaintiff's § 605 claim will have to be dismissed. Golden Boy Promotions might then elect to bring a § 605 claim against defendants, but there would be no possibility of defendants being subject to a double obligation. If the licensing agreement were modified as Gagliardi contends, then there is no risk that Golden Boy Promotions could bring a piracy

claim against defendants because the alleged modification would foreclose a claim by Golden Boy Promotions.

## Conclusion

Because there are genuine issues of material fact as to whether plaintiff has standing to bring a § 605 claim against defendants, plaintiff's motion for summary judgment[24] is denied as is defendants' cross-motion for summary judgment.[25] Defendants' motion to join an indispensable party[26] is also denied.

DATED at Anchorage, Alaska, this 1st day of October, 2019.

/s/ H. Russel Holland
United States District Judge

---

[24]Docket No. 19.

[25]Docket No. 33.

[26]Docket No. 36.